UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

LATICIA HOAGLAND, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS, et al.,

Defendants.

Civil Action No. 4:26-cv-03123-MWB

PLAINTIFF'S MOTION FOR RECUSAL

1. Plaintiff's counsel has now filed a Motion in the Eastern District of Pennsylvania to declare that she has a First Amendment right to freely discuss the cesspool of ethical, sexual, and gender-based violations she observed while working for Judge Matthew Brann, and that Brann's actions in this case are tyrannical, monarchical, and violative of the First Amendment. Therefore, Plaintiff renews her request for Brann to recuse himself, based on this and other litigation filed against him. Summonses have been issued against him.
2. On November 1, 2026, in 5:26-cv-7180, Plaintiff's counsel has filed a Temporary Restraining Order against the Middle District of Pennsylvania, and alleges:

1. Paige Martineau worked at the United States District Court for the Middle District of Pennsylvania from 2014 through 2017, after previously clerking for Judge Robert E. Grossman in the Eastern District of New York.
2. For three years, Martineau observed a cesspool of ethical, sexual, and gender-based violations at the Middle District that contrasted starkly with her earlier clerkship in the Eastern District of New York.
3. Judge Gerald Cohn never spent a single second working in the courthouse or performing the judicial duties for which he was paid, and Martineau and another law clerk did the judging instead.
4. Martineau and another law clerk read the evidence, evaluated the cases, decided who won and lost, drafted decisions, and signed Judge Cohn's name to documents that were represented as his judicial work.
5. Judge Cohn did not personally review, read, or edit the judicial decisions issued under his name, and the litigants were not told that law clerks were actually determining the outcomes.
6. Courthouse employees concealed Judge Cohn's travel, absence, and unavailability while his chambers continued producing judicial decisions under pressure to satisfy Civil Justice Reform Act deadlines.
7. Federal prosecutors and other lawyers repeatedly engaged in private ex parte contacts with federal judges while opposing litigants lacked notice or equal access to the same decisionmakers.
8. Judge Matthew Brann allowed attorneys and other professionally connected people private access to judicial chambers, raising serious concerns about unauthorized discussions of pending cases.
9. Judge Brann allowed and enabled a married man to engage in sexual contact involving federal judicial employee Yvonne Campbell while also participating in improper ex parte communications, simultaneously violating his marriage vows and the rules against secret access concerning pending cases.
10. The man's precise occupational title does not change the relevant comparison because the misconduct involved his personal relationship with a judicial employee, the reported private case-related contacts, and the different response of judicial officials.
11. The married man's contact involving Yvonne Campbell is a comparator because Brann later threatened sanctions against Martineau for criticizing judicial wrongdoing while the reported private contacts and sexual conduct did not produce comparable public discipline.
12. Kenneth Williams sent sexually charged messages using government computers. Martineau identifies those messages as an example of conduct the court allowed while later threatening her professional standing for criticizing misconduct.

13.Martineau alleges that a married man sexually harassed Yvonne Campbell and engaged in improper ex parte contact. She seeks to identify the man accurately and compare the judicial response to his conduct with Brann's threatened sanctions against Martineau.
14.Judge Brann regularly permitted private ex parte contact, and Martineau contends that those contacts deprived opposing litigants of notice and an equal opportunity to be heard.
15.The Middle District employed a technology worker who was described as a diversity hire and who was known for making inappropriate sexual comments about women.
16.That technology worker used government workplace computers to send sexually charged messages.
17.A court staffer asked a female attorney whether her underwear matched her lace top.
18.Martineau also received an inappropriate message about her body and how her backside looked in a skirt.
19.Kenneth Williams's reported inappropriate conduct toward women was part of the same courthouse environment of sexualized comments, gender-based disrespect, and unequal professional standards.
20.Women working in and around the Middle District were exposed to sexualized workplace conduct while officials responsible for enforcing professional ethics tolerated the problems described here.
21.In April 2017, at a luncheon at Le Jeune Chef in Williamsport, Judge Brann profusely praised Martineau's intelligence, federal judicial writing, professional competence, and contributions to disability-related federal law.
22.At that luncheon, Martineau told Judge Brann that Judge Cohn did not do the judging, that his law clerks actually decided the cases, and that courthouse employees concealed his absence.
23.Judge Brann told Martineau to stay quiet and not discuss the ethical problems in Judge Cohn's chambers again.
24.Martineau understood that keeping quiet about the wrongdoing was the condition for receiving a favorable professional recommendation, and she received that recommendation.
25.Judge Brann continued praising and favorably treating Martineau during the next eight years while her legal career advanced and she developed successful legal-aid and public-interest work.
26.Martineau raised misconduct concerns with Judge Brann throughout 2014, not only at the April 2017 luncheon. She told him about judicial practices she considered unethical while she was still employed by the Middle District.

27. In McNeal v. Brouse, No. 4:24-cv-01307, Martineau criticized Brann concerning his Civil Justice Reform Act reporting deadline. This criticism challenged Brann's judicial administration and continued her earlier objections to the courthouse's treatment of statutory case-reporting deadlines.
28. On October 3, 2025, Martineau and SLAAY filed Martineau v. American Bar Association, No. 4:25-cv-01848, directly criticizing the entire system of judicial and attorney self-regulation. The complaint challenged court-made rules, professional discipline, alleged retaliation, and the power of judicial and bar institutions over attorneys and their clients.
29. On October 15, 2025, Brann dismissed the original complaint without prejudice and imposed a forty-page limit. Martineau submitted a forty-page revision, but Brann rejected it on October 17 despite acknowledging its compliance with the page limit.
30. On October 17, 2025, Brann also granted the Pennsylvania Bar Association restrictions affecting communications with defendants' employees, certain Wills for Heroes participant information, and subpoenas. Martineau contends that these measures interfered with her criticism and efforts to gather evidence.
31. Laticia Hoagland filed Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123, on October 20, 2026, after losing her home at a tax sale and alleging that North Penn Legal Services abandoned her. She retained SLAAY and Martineau to investigate and pursue available legal remedies.
32. Hoagland challenged court-made procedural restrictions and sought to preserve her separate causes of action. Martineau submitted 563 individual causes of action and a combined pleading because earlier proceedings had imposed limits on consolidated complaints.
33. On October 23, 2026, Brann issued Document 9 in Hoagland's case. He described Martineau's filing of 564 complaints covering 7,170 pages and at least 75 defendants as apparent abuse of the judicial process, ordered her to show cause under Rule 11 and inherent authority, and stated that her standing as an admitted attorney would be addressed at a separate hearing.
34. Brann required Martineau to file her written response by November 6, 2026, but did not set the hearing date in his October 23 order. Plaintiffs seek an immediate declaration protecting their speech and emergency relief against any sanctions imposed because of their criticism of the judiciary.
35. The threat affects more than Martineau. Hoagland and other SLAAY clients face the possibility of disruption of their chosen attorney's work if an adverse professional action is imposed in retaliation for speech rather than independently established misconduct.

36. The professional relationship changed when Martineau began whistleblowing publicly about malpractice, judicial misconduct, gender-based misconduct, and the unequal enforcement of ethical rules.
37. After Martineau began publicly criticizing judges and filing lawsuits challenging judicial and bar institutions, Brann began issuing restrictive orders, attacking her litigation, and threatening her ability to practice law.
38. On October 17, 2025, Brann restricted Martineau's communications and subpoenas in response to the Pennsylvania Bar Association's request for relief. Martineau v. American Bar Association, No. 4:25-cv-01848, ECF No. 26 (M.D. Pa. Oct. 17, 2025).
39. On October 23, 2026, Brann threatened professional sanctions against Martineau and announced that her admission to practice would be addressed at a hearing without first finding each of her 563 separate causes of action frivolous. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 1–5 (M.D. Pa. Oct. 23, 2026).
40. The Eastern District must understand this timeline because the same federal judge who praised Martineau when she remained silent threatened her career after she began exposing misconduct and demanding accountability.
41. The central question is whether the judiciary may punish a former law clerk and her legal-aid clients for speaking about judicial wrongdoing, identifying the married man and Yvonne Campbell as comparators, and criticizing selective enforcement of professional ethics.
42. Martineau and her clients seek a declaration that these subjects concern the public administration of justice, and they request protection against sanctions imposed because of the content or viewpoint of their criticism.

REQUEST FOR RELIEF

43. Plaintiffs Susquehanna Legal Aid for Adults and Youth, Inc. and Paige Martineau request an immediate declaration that they may publicly describe the ethical, sexual, and gender-based misconduct Martineau encountered while working in the United States District Court for the Middle District of Pennsylvania from 2014 through 2017.
44. Plaintiffs request a declaration that Martineau and her clients may freely discuss Judge Gerald Cohn's alleged failure to perform judicial work, his law clerks' exercise of judicial decisionmaking, prosecutors' private access to judges, the sexualized courthouse environment, and the judiciary's handling of misconduct reports as matters of public concern.
45. Plaintiffs request a declaration that the married man who violated his marriage vows through sexual contact with judicial employee Yvonne Campbell and engaged in reported ex parte contact is an appropriate comparator to Martineau when challenging unequal enforcement of professional standards.

46. Plaintiffs request a declaration that Martineau and her clients may identify and repeatedly discuss Yvonne Campbell, the married man, Kenneth Williams, the court technology employee, and the conduct of Judge Matthew W. Brann without retaliation merely because their criticism embarrasses the Middle District.
47. Plaintiffs request an injunction prohibiting the Middle District and persons legally bound by the injunction from imposing or threatening professional discipline, admission restrictions, litigation disadvantages, or other adverse treatment because Martineau expresses protected criticism or identifies these comparators.
48. Plaintiffs request fair treatment of Martineau under the same viewpoint-neutral professional standards that governed the Middle District's favorable assessment of her competence and the job recommendation she received in 2017.
49. Plaintiffs request preservation of the relevant court records, electronic communications, personnel materials, chamber-contact records, contemporaneous complaints, and employment recommendations, followed by expedited discovery and a prompt noticed hearing.
50. Plaintiffs also request that the Court distinguish protected speech from independently established litigation misconduct and not treat judicial displeasure with the subject or tone of criticism as grounds for sanctions. U.S. Const. amend. I; In re Snyder, 472 U.S. 634, 642–47 (1985).

See, attached, Exhibit A.

3. Judge Brann was incapable of being unbiased before, and he is certainly incapable of being unbiased now. Plaintiff perceives him to be biased. Plaintiff Hoagland is now deeply disgusted with the Court system now because of her perception of bias by Judge Brann.

Plaintiff requests that Judge Brann recuse himself because of his obvious bias.

Respectfully submitted,

/s/ Paige J. Martineau

Paige J. Martineau, Esquire

Counsel for Plaintiff

November 1, 2026