IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH, INC., and PAIGE MARTINEAU, Plaintiffs,

v.

BUCKNELL UNIVERSITY, et al., Defendants.

Civil Action No. 5:26-cv-07180-CH

# EMERGENCY MOTION FOR FIRST AMENDMENT DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION CONCERNING JUDICIAL MISCONDUCT REPORTING, SEXUAL AND GENDER-BASED MISCONDUCT, EX PARTE CONTACT, AND SELECTIVE SANCTIONS

## INTRODUCTION AND FACTUAL BACKGROUND

1. Paige Martineau worked at the United States District Court for the Middle District of Pennsylvania from 2014 through 2017, after previously clerking for Judge Robert E. Grossman in the Eastern District of New York.

2. For three years, Martineau observed a cesspool of ethical, sexual, and gender-based violations at the Middle District that contrasted starkly with her earlier clerkship in the Eastern District of New York.
3. Judge Gerald Cohn never spent a single second working in the courthouse or performing the judicial duties for which he was paid, and Martineau and another law clerk did the judging instead.
4. Martineau and another law clerk read the evidence, evaluated the cases, decided who won and lost, drafted decisions, and signed Judge Cohn's name to documents that were represented as his judicial work.
5. Judge Cohn did not personally review, read, or edit the judicial decisions issued under his name, and the litigants were not told that law clerks were actually determining the outcomes.
6. Courthouse employees concealed Judge Cohn's travel, absence, and unavailability while his chambers continued producing judicial decisions under pressure to satisfy Civil Justice Reform Act deadlines.
7. Federal prosecutors and other lawyers repeatedly engaged in private ex parte contacts with federal judges while opposing litigants lacked notice or equal access to the same decisionmakers.
8. Judge Matthew Brann allowed attorneys and other professionally connected people private access to judicial chambers, raising serious concerns about unauthorized discussions of pending cases.

9. Judge Brann allowed and enabled a married man to engage in sexual contact involving federal judicial employee Yvonne Campbell while also participating in improper ex parte communications, simultaneously violating his marriage vows and the rules against secret access concerning pending cases.

10. The man's precise occupational title does not change the relevant comparison because the misconduct involved his personal relationship with a judicial employee, the reported private case-related contacts, and the different response of judicial officials.

11. The married man's contact involving Yvonne Campbell is a comparator because Brann later threatened sanctions against Martineau for criticizing judicial wrongdoing while the reported private contacts and sexual conduct did not produce comparable public discipline.

12. Kenneth Williams sent sexually charged messages using government computers. Martineau identifies those messages as an example of conduct the court allowed while later threatening her professional standing for criticizing misconduct.

13. Martineau alleges that a married man sexually harassed Yvonne Campbell and engaged in improper ex parte contact. She seeks to identify the man accurately and compare the judicial response to his conduct with Brann's threatened sanctions against Martineau.

14. Judge Brann regularly permitted private ex parte contact, and Martineau contends that those contacts deprived opposing litigants of notice and an equal opportunity to be heard.

15. The Middle District employed a technology worker who was described as a diversity hire and who was known for making inappropriate sexual comments about women.

16. That technology worker used government workplace computers to send sexually charged messages.

17. A court staffer asked a female attorney whether her underwear matched her lace top.

18. Martineau also received an inappropriate message about her body and how her backside looked in a skirt.

19. Kenneth Williams's reported inappropriate conduct toward women was part of the same courthouse environment of sexualized comments, gender-based disrespect, and unequal professional standards.

20. Women working in and around the Middle District were exposed to sexualized workplace conduct while officials responsible for enforcing professional ethics tolerated the problems described here.

21. In April 2017, at a luncheon at Le Jeune Chef in Williamsport, Judge Brann profusely praised Martineau's intelligence, federal judicial writing, professional competence, and contributions to disability-related federal law.

22. At that luncheon, Martineau told Judge Brann that Judge Cohn did not do the judging, that his law clerks actually decided the cases, and that courthouse employees concealed his absence.

23. Judge Brann told Martineau to stay quiet and not discuss the ethical problems in Judge Cohn's chambers again.

24. Martineau understood that keeping quiet about the wrongdoing was the condition for receiving a favorable professional recommendation, and she received that recommendation.

25. Judge Brann continued praising and favorably treating Martineau during the next eight years while her legal career advanced and she developed successful legal-aid and public-interest work.

26. Martineau raised misconduct concerns with Judge Brann throughout 2014, not only at the April 2017 luncheon. She told him about judicial practices she considered unethical while she was still employed by the Middle District.

27. In McNeal v. Brouse, No. 4:24-cv-01307, Martineau criticized Brann concerning his Civil Justice Reform Act reporting deadline. This criticism challenged Brann's judicial administration and continued her earlier objections to the courthouse's treatment of statutory case-reporting deadlines.

28. On October 3, 2025, Martineau and SLAAY filed Martineau v. American Bar Association, No. 4:25-cv-01848, directly criticizing the entire system of judicial and attorney self-regulation. The complaint challenged court-made rules, professional discipline, alleged retaliation, and the power of judicial and bar institutions over attorneys and their clients.

29. On October 15, 2025, Brann dismissed the original complaint without prejudice and imposed a forty-page limit. Martineau submitted a forty-page revision, but Brann rejected it on October 17 despite acknowledging its compliance with the page limit.

30. On October 17, 2025, Brann also granted the Pennsylvania Bar Association restrictions affecting communications with defendants' employees, certain Wills for Heroes participant information, and subpoenas. Martineau contends that these measures interfered with her criticism and efforts to gather evidence.

31. Laticia Hoagland filed Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123, on October 20, 2026, after losing her home at a tax sale and alleging that North Penn Legal Services abandoned her. She retained SLAAY and Martineau to investigate and pursue available legal remedies.

32. Hoagland challenged court-made procedural restrictions and sought to preserve her separate causes of action. Martineau submitted 563 individual causes of action and a combined pleading because earlier proceedings had imposed limits on consolidated complaints.

33. On October 23, 2026, Brann issued Document 9 in Hoagland's case. He described Martineau's filing of 564 complaints covering 7,170 pages and at least 75 defendants as apparent abuse of the judicial process, ordered her to show cause under Rule 11 and inherent authority, and stated that her standing as an admitted attorney would be addressed at a separate hearing.

34. Brann required Martineau to file her written response by November 6, 2026, but did not set the hearing date in his October 23 order. Plaintiffs seek an immediate declaration protecting their speech and emergency relief against any sanctions imposed because of their criticism of the judiciary.

35. The threat affects more than Martineau. Hoagland and other SLAAY clients face the possibility of disruption of their chosen attorney's work if an adverse professional action is imposed in retaliation for speech rather than independently established misconduct.

36. The professional relationship changed when Martineau began whistleblowing publicly about malpractice, judicial misconduct, gender-based misconduct, and the unequal enforcement of ethical rules.

37. After Martineau began publicly criticizing judges and filing lawsuits challenging judicial and bar institutions, Brann began issuing restrictive orders, attacking her litigation, and threatening her ability to practice law.

38. On October 17, 2025, Brann restricted Martineau's communications and subpoenas in response to the Pennsylvania Bar Association's request for relief. Martineau v. American Bar Association, No. 4:25-cv-01848, ECF No. 26 (M.D. Pa. Oct. 17, 2025).

39. On October 23, 2026, Brann threatened professional sanctions against Martineau and announced that her admission to practice would be addressed at a hearing without first finding each of her 563 separate causes of action frivolous. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 1–5 (M.D. Pa. Oct. 23, 2026).

40. The Eastern District must understand this timeline because the same federal judge who praised Martineau when she remained silent threatened her career after she began exposing misconduct and demanding accountability.

41. The central question is whether the judiciary may punish a former law clerk and her legal-aid clients for speaking about judicial wrongdoing, identifying the married man and Yvonne Campbell as comparators, and criticizing selective enforcement of professional ethics.

42. Martineau and her clients seek a declaration that these subjects concern the public administration of justice, and they request protection against sanctions imposed because of the content or viewpoint of their criticism.

REQUEST FOR RELIEF

43. Plaintiffs Susquehanna Legal Aid for Adults and Youth, Inc. and Paige Martineau request an immediate declaration that they may publicly describe the ethical, sexual, and gender-based misconduct Martineau encountered while working in the United States District Court for the Middle District of Pennsylvania from 2014 through 2017.

44. Plaintiffs request a declaration that Martineau and her clients may freely discuss Judge Gerald Cohn's alleged failure to perform judicial work, his law clerks' exercise of judicial decisionmaking, prosecutors' private access to judges, the sexualized courthouse environment, and the judiciary's handling of misconduct reports as matters of public concern.

45. Plaintiffs request a declaration that the married man who violated his marriage vows through sexual contact with judicial employee Yvonne Campbell and engaged in reported ex parte contact is an appropriate comparator to Martineau when challenging unequal enforcement of professional standards.

46. Plaintiffs request a declaration that Martineau and her clients may identify and repeatedly discuss Yvonne Campbell, the married man, Kenneth

Williams, the court technology employee, and the conduct of Judge Matthew W. Brann without retaliation merely because their criticism embarrasses the Middle District.

47. Plaintiffs request an injunction prohibiting the Middle District and persons legally bound by the injunction from imposing or threatening professional discipline, admission restrictions, litigation disadvantages, or other adverse treatment because Martineau expresses protected criticism or identifies these comparators.

48. Plaintiffs request fair treatment of Martineau under the same viewpoint-neutral professional standards that governed the Middle District's favorable assessment of her competence and the job recommendation she received in 2017.

49. Plaintiffs request preservation of the relevant court records, electronic communications, personnel materials, chamber-contact records, contemporaneous complaints, and employment recommendations, followed by expedited discovery and a prompt noticed hearing.

50. Plaintiffs also request that the Court distinguish protected speech from independently established litigation misconduct and not treat judicial displeasure with the subject or tone of criticism as grounds for sanctions. U.S. Const. amend. I; In re Snyder, 472 U.S. 634, 642–47 (1985).

51. The Eastern District case began September 16, 2026, and the Eastern District Clerk issued summonses on September 17, 2026, including process directed to the Middle District of Pennsylvania. Susquehanna Legal Aid for Adults and Youth, Inc. v. Bucknell University, No. 5:26-cv-07180-CH, ECF Nos. 1, 5 (E.D. Pa. Sept. 16–17, 2026).

52. Martineau began her federal judicial career with a clerkship in the Eastern District of New York, where she observed professional judicial work and appropriate boundaries between judges, attorneys, and court personnel.

53. While employed at the Middle District of Pennsylvania from 2014 to 2017, Martineau observed a cesspool of ethical, sexual, and gender-based violations that contrasted starkly with her earlier federal clerkship in the Eastern District of New York.

54. Martineau personally worked in judicial chambers, performed substantive legal research, examined records, prepared decisions, and observed the conduct of judges, law clerks, lawyers, and courthouse personnel.

55. Judge Gerald Cohn never spent a single second performing the judicial work entrusted to him, and Martineau and another law clerk did the judging, decided the cases, drafted the opinions, and signed his name while courthouse personnel concealed his absences.

56. Martineau's direct description of the arrangement is that Judge Cohn did not do the judging because Martineau and another law clerk were the people actually deciding the cases.

57. Martineau's account is that Judge Cohn never spent one second in that courthouse building or working at all while she and another law clerk performed the judging.

58. Martineau and another clerk read the case records, assessed the evidence, resolved the issues, selected the outcomes, drafted the opinions and recommendations, and signed documents in Judge Cohn's name.

59. Judge Cohn did not personally read, review, or edit the decisions that Martineau and another clerk prepared under his name.

60. Chambers personnel concealed Judge Cohn's travel, absence, and unavailability while keeping up the appearance that Judge Cohn was personally carrying out his assigned work.

61. The courthouse maintained case-processing and Civil Justice Reform Act reporting deadlines while the judicial work was being performed and attributed in the manner described above.

62. These practices raise an obvious public question about whether litigants received decisions from the judicial officer assigned to their cases and whether the court accurately represented how those decisions were made.

63. Federal prosecutors and other attorneys also had private access to federal judges in circumstances Martineau identifies as recurring ex parte communications regarding pending cases.

64. Those private communications excluded opposing parties from the same opportunity to be heard and compromised the appearance of equal treatment before the court.

65. Judge Brann permitted private attorney access to chambers, and Martineau challenges whether that access included substantive discussions about pending cases without notice to affected litigants.

66. Unauthorized ex parte discussions about pending cases are especially troubling when they occur in a courthouse whose officials later claim extraordinary authority to punish an attorney for speaking publicly about judicial ethics.

67. The Middle District also tolerated sexually inappropriate workplace comments and electronic messages involving people working in and around the courthouse.

68. A court technology employee was described by coworkers as a "diversity hire" and was known for making inappropriate sexual comments about women.

69. That technology employee used government work computers to send sexually charged text messages while employed in the courthouse.

70. Those workplace communications involved the misuse of court equipment and illustrate the gender-based problems Martineau seeks to expose.

71. A court staffer asked a female attorney whether her underwear matched her lace top.

72. The inquiry about a woman's lace underwear was sexualized workplace conduct rather than a legitimate professional conversation.

73. Martineau also received or learned of an inappropriate message describing her body and the appearance of her backside in a skirt.

74. Kenneth Williams engaged in conduct toward women that Martineau identifies as sexually inappropriate and relevant to the courthouse's unequal treatment of professional misconduct.

75. The comments about clothing, underwear, women's bodies, and sexualized electronic messages form part of the ethical and gender-based environment Martineau encountered during federal employment.

76. The former judicial employee has a right to identify those incidents accurately, explain their significance, and compare their institutional treatment with the treatment of her later criticism.

77. Yvonne Campbell was a judicial employee whose interactions with attorneys form part of the Middle District professional-conduct comparison.

78. A married male attorney engaged in sexual contact with Yvonne Campbell while also having private access to judicial personnel and participating in ex parte communications that Martineau identifies as improper.

79. The married man violated his marriage vows and allegedly violated the rules governing ex parte contact, yet Martineau identifies no comparably aggressive public disciplinary action against him by Judge Brann.

80. The comparison concerns the man's private access to judicial employees, communications about pending matters, sexual involvement in the courthouse environment, and the treatment of his conduct by judicial leadership.

81. The fact that the man was married is part of Martineau's factual account, but the constitutional comparison centers on access, professional treatment, and reported violations of judicial-communication rules.

82. The married man who engaged in sexual contact with Yvonne Campbell and the reported ex parte communications is an appropriate comparator to Paige Martineau in examining why Judge Brann threatened the woman reporting wrongdoing while tolerating different conduct by men with institutional access.

83. Martineau and her clients may discuss that married attorney's conduct and the role of Yvonne Campbell as often as reasonably necessary to present their legal claims and express their views on judicial accountability.

84. The judiciary cannot transform a comparison involving alleged ex parte contact, professional favoritism, or gender-based misconduct into a disciplinary offense simply because its officers dislike the discussion.

85. Plaintiffs seek preservation of any nonprivileged records showing when and why the married man entered chambers, whom he contacted, what cases were pending, whether opposing parties received notice, and how the Middle District responded.

86. In April 2017, Martineau attended a luncheon at Le Jeune Chef in Williamsport where Judge Matthew W. Brann profusely praised her federal judicial writing, intelligence, professional competence, and contributions to federal disability jurisprudence.

87. Judge Brann encouraged Martineau to continue in federal judicial service and treated her as a highly capable professional whose work improved the quality of federal judicial decisions.

88. Martineau informed Judge Brann that Judge Cohn was not personally performing the judicial work assigned to him and that law clerks made decisions and signed documents in his name.

89. Judge Brann instructed Martineau not to discuss Judge Cohn’s misconduct again.

90. Martineau was told that keeping quiet about the conduct she witnessed would preserve the favorable recommendation she needed, and she remained quiet and received the professional recommendation.

91. Judge Brann's praise and the favorable 2017 recommendation are important because the same judicial institution later portrayed Martineau as incompetent and professionally unfit after she publicly criticized judges and filed litigation.

92. The Middle District cannot lawfully use agreement or silence about judicial misconduct as a condition for equal professional opportunities or retaliate because a former judicial employee later chooses to speak about matters of public concern. U.S. Const. amend. I; Perry v. Sindermann, 408 U.S. 593, 597–98 (1972).

93. Judge Brann did not identify or impose a comparable public sanctions response against the male attorney involved in the Yvonne Campbell matter or the other reported sexualized and ex parte conduct.

94. On October 17, 2025, Judge Brann used claimed attorney-regulation and inherent powers to restrict Martineau's communications and subpoenas in litigation involving the Pennsylvania Bar Association. Martineau v. American Bar Association, No. 4:25-cv-01848, ECF No. 26 (M.D. Pa. Oct. 17, 2025).

95. That order demonstrated Judge Brann's willingness to use broad professional-regulatory authority when a woman attorney challenged influential judicial and bar institutions.

96. On October 23, 2026, Judge Brann described Martineau's filing of 564 civil complaints as professional malfeasance and directed her to show cause why she should not face sanctions. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 1–5 (M.D. Pa. Oct. 23, 2026).

97. Judge Brann's October 23, 2026 Order to Show Cause expressly stated that Martineau's standing as an attorney admitted to the Middle District would be addressed at the sanctions hearing. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 5 n.15 (M.D. Pa. Oct. 23, 2026).

98. Judge Brann required Martineau to answer the sanctions allegations by November 6, 2026, creating a concrete and imminent threat to the continued representation of legal-aid clients. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 5 (M.D. Pa. Oct. 23, 2026).

99. The October 23 order also invoked earlier judicial criticism of Martineau's remarks about judges and court personnel, directly connecting the threatened professional consequences with the subject matter of her public criticism.

Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 4–5 (M.D. Pa. Oct. 23, 2026).

100. Plaintiffs challenge the unequal treatment of conduct and speech, including whether the threat of professional sanctions reflects hostility to Martineau's criticism, unlawful gender discrimination, or both.

101. Judicial integrity, judicial absenteeism, clerks deciding cases, ex parte contact, courthouse sexual harassment, gender discrimination, and selective professional discipline are matters of public concern because they directly affect the public's confidence in the administration of justice. Connick v. Myers, 461 U.S. 138, 146–48 (1983); Lane v. Franks, 573 U.S. 228, 241 (2014).

102. The Supreme Court recognizes that exposing government inefficiency and misconduct is an especially important form of public speech even when the speaker learned the relevant facts through public employment. Lane v. Franks, 573 U.S. 228, 236–42 (2014); Garcetti v. Ceballos, 547 U.S. 410, 425 (2006).

103. The First Amendment protects truthful testimony and citizen speech concerning misconduct without requiring former government employees to pretend they did not observe events during their employment. Lane v. Franks, 573 U.S. 228, 238–42 (2014).

104. The Supreme Court refused to uphold the suspension of an attorney based on highly critical statements about a federal court's administration and distinguished protected professional criticism from conduct justifying discipline. In re Snyder, 472 U.S. 634, 642–47 (1985).

105. Public officials cannot retaliate against a lawyer because she files petitions and expresses viewpoints the officials dislike. U.S. Const. amend. I; Mirabella v. Villard, 853 F.3d 641, 649–51 (3d Cir. 2017).

106. Federal authorities must not enforce professional standards differently because of constitutionally prohibited purposes, including sex discrimination or retaliation for protected expression. U.S. Const. amends. I, V; Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

107. No part of this request asks the Court to declare that criticism is categorically immune from rules governing knowingly false factual statements, confidential material, witness harassment, or separately established litigation misconduct.

108. The request instead asks for a narrow and enforceable order prohibiting penalties imposed because Martineau describes judicial misconduct, identifies comparators, criticizes institutional authority, or petitions for accountability.

109. Immediate relief is needed because the November 6, 2026 show-cause deadline and announced hearing threaten professional consequences while Martineau continues speaking on these subjects.

110. Loss of constitutional speech rights can constitute irreparable injury, and the potential harm to Martineau's professional standing and legal-aid clients requires prompt consideration. Elrod v. Burns, 427 U.S. 347, 373 (1976).

111. The likelihood-of-success inquiry favors Plaintiffs to the extent the challenged discipline actually targets the viewpoint of their protected criticism rather than objectively established and independently identified misconduct. Reilly v. City of Harrisburg, 858 F.3d 173, 176–80 (3d Cir. 2017).

112. The balance of hardships and public interest favor preservation of protected reporting and petitioning while permitting ordinary, neutral enforcement of legitimate judicial rules. Reilly v. City of Harrisburg, 858 F.3d 173, 179–80 (3d Cir. 2017).

113. Because an ex parte temporary restraining order requires specific verified facts establishing injury before the adverse party can be heard and a written certification of actual notice efforts, Plaintiffs also request an immediate noticed hearing if the Court concludes those prerequisites have not been satisfied. Fed. R. Civ. P. 65(a)(1), (b)(1).

114. Plaintiffs request judgment declaring that the speech described in this motion concerns public judicial business and that the Middle District may not sanction Martineau simply for speaking in direct, critical, or embarrassing terms about the conduct of judges, lawyers, or judicial employees. 28 U.S.C. § 2201; U.S. Const. amend. I.

115. Plaintiffs request judgment declaring that the married man's reported ex parte access and sexual contact involving Yvonne Campbell may be offered and discussed as comparator evidence in an appropriately presented claim challenging selective professional enforcement.

116. Plaintiffs request judgment declaring that Martineau and her clients may discuss Kenneth Williams's inappropriate conduct, the court technology employee's sexually charged messages on government computers, and the court staffer's lace-underwear remark when addressing courthouse gender-based misconduct.

117. Plaintiffs request judgment declaring that the factual matters concerning Judge Cohn's courthouse absence, nonreview of decisions, law-clerk decisionmaking, and signature practices may be discussed, investigated, and reported as matters of public concern.

118. Plaintiffs request an injunction forbidding the Middle District and persons bound by Rule 65(d)(2) from issuing professional sanctions or restricting Martineau's legal practice because of the content or viewpoint of

protected criticism, including the identification and discussion of these comparators. Fed. R. Civ. P. 65(d)(2).

119. Plaintiffs request the preservation of relevant lawfully discoverable records and a prompt hearing concerning the difference between the judicial system's 2017 praise and recommendation of Martineau and its subsequent criticism of her competence after she challenged judicial misconduct.

120. Plaintiffs request restoration of equal, nondiscriminatory professional access and consideration without compelling any official to express personal praise or create an inaccurate employment reference.

121. Plaintiffs request all further appropriate declaratory and equitable relief needed to prevent viewpoint-based retaliation and to protect the rights of Martineau, SLAAY, and the legal-aid clients whose access to counsel is affected by threatened sanctions.

## SPECIFIC FIRST AMENDMENT DECLARATIONS REQUESTED

Plaintiffs request a declaration that Paige Martineau and SLAAY have a First Amendment right to:

122. Publicly criticize Judge Matthew W. Brann, Judge Gerald Cohn, and the United States District Court for the Middle District of Pennsylvania.

123. Expose the ethical, sexual, and gender-based violations Martineau encountered during her employment at the Middle District from 2014 through 2017.

124. Publicly state that Judge Cohn did not perform judicial work, that law clerks decided cases and signed his name, and that courthouse personnel concealed his absences.

125. Criticize judges who permit law clerks to decide cases, write opinions, or sign judicial documents without proper judicial review.

126. Criticize Brann's alleged practice of permitting improper ex parte communications that deny opposing litigants notice and equal participation.

127. Identify and discuss allegations that a married man sexually harassed Yvonne Campbell, violated his marriage vows, and engaged in improper ex parte contact, while distinguishing the information Martineau personally knows from matters requiring proof.

128. Specifically identify the married man, once accurately identified, as a comparator to Martineau when challenging Brann's selective enforcement of professional ethics rules, gender discrimination, favoritism, and retaliation.

129. Argue publicly that Brann responded differently to the reported sexual misconduct and improper ex parte contact of professionally connected men than to Martineau's criticism and lawsuits.

130. Identify Yvonne Campbell and discuss allegations of sexual harassment involving her, the relevant professional relationships, and the institution's response.

131. Identify Kenneth Williams and discuss his sexually charged messages, including their transmission using government computers.

132. Discuss the court technology worker's inappropriate comments about women and the description of that worker as a "diversity hire."

133. Discuss the court staffer's remark asking a female attorney whether her underwear matched her lace top, without identifying that staffer by name in this motion.

134. Discuss the inappropriate messages about Martineau's body and her appearance in a skirt.

135. Identify judges, prosecutors, attorneys, and employees who participated in improper ex parte contact, sexual harassment, workplace discrimination, or concealment of judicial misconduct when supported by the relevant facts.

136. Criticize Brann for instructing Martineau to remain silent about Judge Cohn's conduct while praising her professional competence and writing.

137. Compare Brann's professional praise and support during Martineau's period of silence with his later threatened sanctions after she began publicly criticizing the judiciary.

138. Criticize Brann concerning his Civil Justice Reform Act reporting deadline in McNeal v. Brouse.

139. Criticize Civil Justice Reform Act deadlines, docket administration, judicial reporting practices, and their effects on litigants.

140. File, prosecute, and publicly discuss nonfrivolous lawsuits, including Martineau v. American Bar Association, challenging judicial authority, court-created rules, and attorney self-regulation.

141. Challenge the constitutional authority of judges to make procedural rules, invoke inherent powers, impose sanctions, and decide lawsuits concerning their own institution.

142. Criticize Brann's dismissal of pleadings, forty-page limitation, restrictions on professional communications and subpoenas, and stay of the Martineau v. ABA litigation.

143. Bring distinct, adequately grounded causes of action and argue that the number of claims alone does not prove frivolousness or improper purpose.

144. Represent Laticia Hoagland and other SLAAY clients in lawful litigation addressing legal-aid malpractice, judicial misconduct, and access to courts.

145. Seek lawfully available records, contact prospective witnesses, investigate claims, request discovery, and seek subpoenas concerning misconduct and professional comparators.

146. Criticize Brann's October 23, 2026 sanctions show-cause order in Hoagland, including the November 6 response deadline and threatened review of Martineau's admission to practice.

147. Challenge the Hoagland sanctions proceeding as retaliation for protected judicial criticism and constitutional petitioning.

148. Assert that Brann's different treatment of male comparators and Martineau supports a claim of sex discrimination, unequal professional enforcement, or First Amendment retaliation.

149. File judicial-misconduct complaints, recusal motions, appeals, mandamus petitions, and other lawful proceedings to seek judicial accountability.

150. Criticize the federal judiciary's response to sexual harassment, gender discrimination, improper judicial conduct, attorney regulation, and complaints against federal judges.

151. Discuss these matters with clients, lawyers, journalists, elected officials, agencies, professional associations, and the public, subject to applicable confidentiality duties.

152. Use forceful, harsh, and embarrassing language when expressing protected opinions concerning judges and government misconduct.

153. Advocate changes to judicial oversight, public accountability, professional regulation, and protections against retaliation.

154. Continue lawful client representation and petitioning without adverse professional action imposed because of the content or viewpoint of protected speech.

155. Identify, discuss, and repeatedly rely on the married man's alleged sexual harassment involving Yvonne Campbell, reported ex parte communications, and the different institutional response as comparator evidence in appropriate litigation and public advocacy.

These declarations concern protected speech, petitioning, and the presentation of properly supported comparator evidence. Plaintiffs do not request blanket immunity from valid confidentiality rules, evidentiary rulings, or sanctions for independently established litigation misconduct.

## SPECIFIC TEMPORARY, PRELIMINARY, AND PERMANENT RELIEF REQUESTED

156. Declare that Martineau and SLAAY may report and discuss misconduct at the federal courthouse where Martineau worked, including reported sexual harassment of Yvonne Campbell, reported improper ex parte contact, Kenneth Williams's messages, Judge Cohn's judicial work practices, and Brann's response to those subjects.

157. Declare specifically that Plaintiffs may identify and use the married man involved with Yvonne Campbell as a professional comparator to Martineau in claims of selective enforcement, gender discrimination, and retaliation.

158. Declare that criticism of Brann's Civil Justice Reform Act deadline in McNeal and criticism of the judicial system in Martineau v. ABA are matters potentially protected by the First Amendment.

159. Temporarily restrain any defendant and persons legally bound under Rule 65(d)(2) from imposing professional punishment on Martineau because of the content or viewpoint of her protected speech and petitioning.

160. To the extent permitted by this Court's jurisdiction, preserve the status quo concerning the October 23, 2026 Hoagland show-cause order, including the November 6 written-response deadline, threatened sanctions, and possible adverse action concerning Martineau's admission to practice, pending prompt adversarial review.

161. Preserve Martineau's ability to provide lawful representation to SLAAY clients, including Hoagland, without professional retaliation based on protected criticism of the judiciary.

162. Hold an expedited hearing before November 6, 2026, or as soon as practicable, to determine the proper scope of preliminary relief and whether Brann's threatened sanctions were motivated by protected speech.

163. Order the preservation of lawfully discoverable nonprivileged records concerning the reported misconduct, Brann's knowledge of it, professional comparators, and the decisions to restrict Martineau's communications or threaten sanctions.

164. Provide the findings required by Rule 65 and specify precisely the parties, duration, restrained acts, and any security required under Rule 65(c).

165. Grant further declaratory and equitable relief supported by the evidence, subject to jurisdictional and sovereign-immunity limits.

Respectfully submitted,

/s/ Paige J. Martineau

Paige J. Martineau, Esquire

Susquehanna Legal Aid for Adults and Youth

647 East Third Street, Williamsport, Pennsylvania 17701

Counsel for Plaintiffs and Individual Plaintiff

November 1, 2026

MEMORANDUM OF LAW IN SUPPORT OF FIRST AMENDMENT DECLARATORY AND INJUNCTIVE RELIEF

166. The central constitutional issue is whether judicial officials may use sanctions and professional admission authority to punish a former employee for publicly exposing alleged courthouse misconduct, naming the people involved, and challenging unequal treatment of male professional comparators.

167. Speech concerning whether a federal judge personally decided cases, whether judicial employees signed documents in the judge's name, and whether lawyers communicated privately with judges about pending matters concerns the integrity of federal adjudication and therefore plainly implicates public affairs. Connick v. Myers, 461 U.S. 138, 146–48 (1983); Lane v. Franks, 573 U.S. 228, 241 (2014).

168. Speech concerning sexualized workplace communications, inappropriate comments about women's underwear, and the treatment of female employees concerns employment equality and the public administration of a federal court. Connick v. Myers, 461 U.S. 138, 146–48 (1983); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21–23 (1993).

169. The comparison involving the married man and Yvonne Campbell is offered to examine whether attorneys with personal access to judicial

personnel received more favorable treatment than a former female employee who challenged institutional misconduct.

170. The comparison does not depend on establishing that adultery alone violates an identified professional rule because the legally relevant conduct is the alleged ex parte access, any case-related influence, and the differential response to comparable professional concerns.

171. Canon 3(A)(4) of the Code of Conduct for United States Judges restricts ex parte communications concerning pending or impending matters, while Canon 3(B)(6) requires appropriate action when reliable information indicates likely judicial or attorney misconduct. Code of Conduct for United States Judges Canons 3(A)(4), 3(B)(6).

172. The case also presents a direct comparison between Judge Brann's April 2017 praise of Martineau and his October 2026 order threatening her continued admission to practice after she publicly criticized the federal judiciary.

173. A federal court may sanction objectively unreasonable filings or established professional misconduct, but it may not equate unwelcome criticism with misconduct merely because the criticism is severe or embarrassing. In re Snyder, 472 U.S. 634, 642–47 (1985); Fed. R. Civ. P. 11(b)–(c).

174. The Third Circuit protects the right to petition government officials and rejects adverse governmental treatment imposed because of protected expressive activity. Mirabella v. Villard, 853 F.3d 641, 649–51 (3d Cir. 2017).

175. The October 23 show-cause order is a concrete threatened proceeding, and its reference to Martineau's prior criticism of judges gives the protected-speech question immediacy rather than reducing it to an abstract disagreement over tone. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 4–5 (M.D. Pa. Oct. 23, 2026).

176. Plaintiffs seek prospective First Amendment protection against the Middle District as a defendant in the Eastern District action rather than asking the Eastern District to sit as an ordinary appellate tribunal over the Hoagland docket.

177. The Federal Declaratory Judgment Act permits a declaration only in an actual controversy within the Court's jurisdiction and does not independently supply jurisdiction or override otherwise applicable limits on relief. 28 U.S.C. § 2201.

178. An injunction would have to identify the precise prohibited retaliatory acts and persons bound, and it could not serve as a general exemption from separately established professional obligations. Fed. R. Civ. P. 65(d).

179. The imminent threat of interference with speech and legal representation supports an expedited hearing, and the balance of the public interest favors open discussion of judicial accountability under the ordinary preliminary-injunction framework. Reilly v. City of Harrisburg, 858 F.3d 173, 176–80 (3d Cir. 2017).

180. Plaintiffs support emergency relief with the accompanying detailed declaration and the written certification addressing notice efforts and the grounds for requesting ex parte relief, while requesting expedited proceedings on notice in the alternative. Fed. R. Civ. P. 65(a)(1), (b)(1).

181. Plaintiffs request declarations protecting public-concern speech, a narrowly tailored anti-retaliation injunction, preservation of relevant evidence, and a hearing addressing the unequal professional treatment described in the accompanying motion.

## SUPPLEMENTAL RULE 65 ANALYSIS AND REQUEST FOR IMMEDIATE HEARING

182. Likely success: Martineau identifies speech criticizing Brann's handling of the Civil Justice Reform Act deadline in McNeal, the legal system challenged in Martineau v. ABA, and misconduct she learned about during federal employment. The October 23, 2026 Hoagland order cites past criticism of courts and courthouse personnel and threatens sanctions. These

facts support a request to determine whether protected speech was a substantial or motivating factor, while leaving the independent merits of any Rule 11 charge for a neutral determination.

183. Irreparable injury: A threatened professional restriction imposed for protected criticism may chill Martineau's present speech and interfere with SLAAY's legal services. The November 6 response deadline makes expedited consideration necessary even though the October 23 order schedules the actual hearing for a later date.

184. Balance of hardships: Plaintiffs request protection against retaliatory punishment, not freedom to disregard lawful judicial orders. Defendants retain authority to enforce neutral rules against independently proven misconduct, while Plaintiffs seek to avoid injury caused by official hostility to protected viewpoints.

185. Public interest: The public benefits when former judicial employees can report alleged judicial wrongdoing and when courts apply rules protecting against ex parte contacts and workplace sexual harassment without viewpoint discrimination.

186. Rule 65(b)(1): Ex parte relief requires specific facts showing immediate and irreparable injury before an opposing party can be heard and a written attorney certification stating actual notice efforts and reasons

notice should not be required. If the Court finds these requirements unsatisfied, Plaintiffs request the fastest available noticed hearing rather than an assumption that no notice is necessary.

187. Jurisdiction and scope: Plaintiffs invoke federal-question jurisdiction for a concrete controversy over threatened retaliation; 28 U.S.C. § 2201 permits declaratory relief only within an independently established jurisdictional basis. Any order affecting proceedings in another federal district must rest on an identified lawful source of authority, bind only those described in Rule 65(d)(2), and specify acts rather than issue a general command to respect constitutional rights.

188. Security and duration: Plaintiffs ask the Court to waive or set nominal security if authorized by Rule 65(c), and to state the expiration date and hearing procedure required by Rule 65(b)(2).

Respectfully submitted,

/s/ Paige J. Martineau

Paige J. Martineau, Esquire

Counsel for Plaintiffs and Individual Plaintiff

November 1, 2026

DECLARATION OF PAIGE J. MARTINEAU UNDER 28 U.S.C. § 1746

189. I, Paige J. Martineau, am an individual plaintiff and counsel in this action, and I make this declaration from my personal knowledge except where I expressly describe information obtained from other persons or records.

190. I previously served as a federal judicial law clerk in the Eastern District of New York, where I observed a substantially different approach to judicial work and professional boundaries.

191. I worked within the United States District Court for the Middle District of Pennsylvania from 2014 through 2017, including in the chambers of Judge Gerald Cohn.

192. While employed there, I observed what I describe as a cesspool of ethical, sexual, and gender-based violations that contrasted starkly with my earlier federal clerkship in the Eastern District of New York.

193. I personally researched cases, read records, evaluated evidence, prepared recommendations and decisions, and performed the work assigned to Judge Cohn’s chambers.

194. Judge Cohn never worked a single second on the judicial decisions I prepared, and I was the person doing the actual judicial decisionmaking work in the matters assigned to me.

195. Judge Cohn did not spend time in the courthouse performing the substantive judicial work described here, and another law clerk and I did the work that appeared to be performed in his name.

196. Another law clerk and I determined whether claimants won or lost, drafted the resulting documents, and signed Judge Cohn's name as part of the chambers practices I witnessed.

197. Judge Cohn did not read, review, or edit the decisions that we prepared as I observed the chambers operating.

198. We were instructed to conceal Judge Cohn's absences, travel, and unavailability while the chambers continued reporting its work as judicial work attributable to him.

199. The pressure to satisfy Civil Justice Reform Act deadlines existed alongside the practices of clerk decisionmaking and concealment that I personally witnessed.

200. I encountered or learned of private contacts involving federal prosecutors and other attorneys and judicial personnel that raised concerns about ex parte communications regarding pending cases.

201. I am seeking to discuss openly the identity of the attorneys, the nature of the communications, the parties excluded from them, and whether judicial decisionmakers treated them differently.

202. I encountered a court workplace in which inappropriate sexual comments about women, sexualized text messages, and conduct involving court employees formed part of the professional environment.

203. A technology employee at the courthouse was described as a "diversity hire," was known for making sexual comments about women, and used government workplace computers to send sexually charged messages.

204. I identify a remark by a court staffer asking a female attorney whether her underwear matched her lace top as one example of the inappropriate sexual comments at issue.

205. I also received or learned of a sexually inappropriate communication describing my body and the appearance of my backside in a skirt.

206. I identify Kenneth Williams and the conduct involving him described in the accompanying motion as part of the inappropriate sexual and gender-based professional environment I observed or learned about.

207. I identify Yvonne Campbell's interactions with a married male attorney, including the reported sexual relationship and improper ex parte contact, as comparators to the professional scrutiny and threats directed at me.

208. The married man's violation of his marriage vows forms part of my comparison, and my legal concern focuses particularly on unauthorized

access to judicial personnel, private case-related communications, and selective professional enforcement.

209. I wish to discuss Yvonne Campbell, the married man, Kenneth Williams, the technology employee, the court staffer, and the relevant judicial officers in public statements, legal papers, and conversations about judicial accountability.

210. In April 2017, I attended a luncheon at Le Jeune Chef in Williamsport during which Judge Matthew W. Brann praised my legal writing, intellect, professional competence, and contributions to disability-related federal litigation.

211. Judge Brann encouraged me to continue my work within the federal judiciary and treated me as a capable federal law clerk.

212. At that luncheon I told Judge Brann that Judge Cohn did not perform the actual judicial work, that his clerks made substantive decisions, and that we signed judicial documents in his name.

213. Judge Brann instructed me not to discuss those practices again.

214. I was told to remain quiet about the practices I witnessed to protect the favorable professional recommendation I needed, and I remained quiet and obtained the recommendation.

215. I understood the contrast between praise and professional opportunity while silent and the later threats after I publicly challenged judges, attorney regulation, and judicial misconduct.

216. On October 17, 2025, Judge Brann entered an order restricting professional communications and subpoenas in my litigation against the American Bar Association and other defendants. Martineau v. American Bar Association, No. 4:25-cv-01848, ECF No. 26 (M.D. Pa. Oct. 17, 2025).

217. On October 23, 2026, Judge Brann entered an order directing me to show cause concerning potential professional sanctions and announced that my admission to practice before the Middle District would be addressed at the sanctions hearing. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 1–5 & n.15 (M.D. Pa. Oct. 23, 2026).

218. The October 23 order requires a response by November 6, 2026, and I am concerned that the threatened professional action could impair my representation of legal-aid clients and burden my public speech about matters of judicial misconduct. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 5 (M.D. Pa. Oct. 23, 2026).

219. I seek an order protecting me and my clients from punishment imposed because of the viewpoint of our statements about federal judicial

operations, ex parte communications, sexual and gender-based conduct, and unequal enforcement of professional standards.

220. I request preservation of court records, communications, professional recommendations, personnel and computer records lawfully subject to preservation, and material concerning the reported attorney contacts and professional treatment.

221. I am requesting prompt judicial consideration of these issues because of the November 6, 2026 deadline in the Middle District and the possibility of professional consequences before the speech-related dispute is heard.

222. I reported concerns about judicial misconduct to Judge Brann beginning in 2014 and continued raising those concerns during my employment in the Middle District through 2017.

223. I identify Kenneth Williams as the person who sent sexually charged messages using government workplace computers. I seek to discuss those messages in public reports and court filings concerning courthouse professional standards.

224. I allege that a married man sexually harassed Yvonne Campbell and engaged in improper ex parte communications. I seek to identify the man accurately and discuss the institutional response as a comparator in claims

challenging selective professional discipline. The precise professional title of that man remains to be established.

225. I criticized Brann concerning his Civil Justice Reform Act reporting deadline while representing James Alva McNeal in McNeal v. Brouse, No. 4:24-cv-01307.

226. On October 3, 2025, SLAAY and I filed Martineau v. American Bar Association, No. 4:25-cv-01848, challenging the conduct and legal authority of judicial and bar institutions.

227. Brann dismissed that complaint on October 15, 2025, imposed a forty-page amended-complaint limit, and on October 17 restricted communications and subpoenas in that litigation.

228. On October 20, 2026, my client Laticia Hoagland filed a federal action challenging court procedures, the failure of earlier legal-services representation, and alleged interference with her rights.

229. Brann's October 23, 2026 show-cause order in Hoagland identifies 564 complaints, 7,170 pages, and at least 75 defendants; it requires my response by November 6 and states that my standing as an attorney admitted to the Middle District will be addressed at a hearing to be scheduled separately.

230. I intend to continue speaking about these judicial practices, reporting the reported misconduct involving Yvonne Campbell and Kenneth Williams, and using the married man's reported conduct as a comparator in lawful litigation and public criticism.

231. I am concerned that the threatened professional proceedings will restrict my protected advocacy and interfere with my representation of Hoagland and other SLAAY clients.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge and, where indicated, as to matters learned from others or records.

Dated: November 1, 2026

Signature: /s Paige Martineau

Paige J. Martineau

ATTORNEY CERTIFICATION OF NOTICE EFFORTS AND REASONS NOTICE SHOULD NOT BE REQUIRED UNDER FED. R. CIV. P. 65(b)(1)(B)

232. I, Paige J. Martineau, am counsel and an individual plaintiff in Susquehanna Legal Aid for Adults and Youth, Inc. v. Bucknell University, No. 5:26-cv-07180-CH (E.D. Pa.), and submit this attorney certification under Federal Rule of Civil Procedure 65(b)(1)(B).

233. On September 16, 2026, Plaintiffs filed their Eastern District complaint, and on September 17, 2026, the Clerk issued summonses, including one identifying the Middle District of Pennsylvania as a defendant. Susquehanna Legal Aid for Adults and Youth, Inc. v. Bucknell University, No. 5:26-cv-07180-CH, ECF Nos. 1, 5 (E.D. Pa. Sept. 16–17, 2026).

234. Issuance of a summons is not itself proof of service, and this certification does not represent that service of the complaint or notice of this specific emergency application was completed merely because the Clerk issued process.

235. The record presently available for preparation of this application contains no dated direct notice email, telephone call, delivery receipt, or certificate of service showing advance notice of this particular emergency application to the Middle District of Pennsylvania or its counsel.

236. I therefore do not certify any unverified telephone call, electronic message, or service attempt as an actual completed notice effort, and I request that the Court assess the application based on the notice facts expressly set forth here.

237. Judge Brann entered his October 23, 2026 Order to Show Cause Concerning Sanctions, requiring my response by November 6, 2026, and stating that my admission to practice would be addressed at a later hearing. Hoagland v. Administrative Office of Pennsylvania Courts, No. 4:26-cv-03123-MWB, ECF No. 9, at 5 & n.15 (M.D. Pa. Oct. 23, 2026).

238. The requested emergency relief seeks to prevent sanctions or professional disadvantages imposed because of protected criticism during the short interval before the November 6, 2026 response deadline.

239. I request consideration without advance notice because I fear the threatened professional consequences may be imposed or intensified before ordinary adversarial briefing can be completed, and the continuing restriction on my willingness to discuss judicial misconduct and identify comparators creates an immediate speech-related injury.

240. I recognize that a fear of retaliation alone does not establish that notice is legally excused, and I request an immediate noticed hearing and appropriate expedited briefing if the Court finds the requirements for relief without notice unsatisfied.

241. If the Court grants any ex parte temporary restraining order, Plaintiffs request that the Court specify its duration, set a prompt preliminary-injunction hearing, and require prompt service of the order and application upon persons bound, consistent with Federal Rule of Civil Procedure 65(b).

242. I certify that the statements above describe only the notice information established in the presently available filing materials and do not assert unverified completed notice steps.

Certified under Federal Rule of Civil Procedure 65(b)(1)(B), subject to counsel's review and execution of this certification.

Dated: November 1, 2026

Signature: /s Paige Martineau

Paige J. Martineau, Esquire

Counsel for Plaintiffs and Individual Plaintiff

# PROPOSED ORDER

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH, INC., and PAIGE MARTINEAU, Plaintiffs, v. BUCKNELL UNIVERSITY, et al., Defendants. Civil Action No. 5:26-cv-07180-CH.

ORDER

Upon consideration of Plaintiffs' emergency application and the supporting record, and after findings that the Court possesses jurisdiction over the parties and the particular relief ordered, and that the applicable requirements of Federal Rule of Civil Procedure 65 have been met, IT IS ORDERED:

1. Plaintiffs' motion is GRANTED.

2. The Court finds that Plaintiffs present an actual controversy concerning threatened professional retaliation for alleged protected speech and petitioning regarding judicial misconduct, improper ex parte contacts, reported sexual harassment, and selective professional discipline.

3. Plaintiffs' request for declaratory relief, including the right to discuss reported sexual harassment involving Yvonne Campbell and the married man's reported ex parte contacts as professional comparator evidence, shall be considered on an expedited basis.

4. The security required under Rule 65(c) is set at $0.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSQUEHANNA LEGAL AID FOR ADULTS AND YOUTH, INC., and PAIGE MARTINEAU,

Plaintiffs,

v. BUCKNELL UNIVERSITY, et al.,

Defendants.

Civil Action No. 5:26-cv-07180-CH

PROPOSED ORDER

AND NOW, upon consideration of Plaintiffs' Emergency Motion for Temporary Restraining Order and Declaratory Relief, it is ORDERED:

1. Paige Martineau and SLAAY may exercise their First Amendment rights to criticize Judge Matthew W. Brann, Judge Gerald Cohn, and the Middle District of Pennsylvania, including through repeated, forceful, harsh, and embarrassing criticism of judicial conduct.
2. Plaintiffs may publicly discuss the ethical, sexual, and gender-based misconduct Martineau witnessed while working at the Middle District from 2014 through 2017.
3. Plaintiffs may criticize Judge Cohn's failure to perform judicial duties, the use of law clerks to decide cases, the signing of judicial decisions, and the concealment of judicial absences.

4. Plaintiffs may criticize Judge Brann's ex parte communications, his treatment of litigants, his judicial administration, and his enforcement of professional ethics rules.
5. Plaintiffs may identify and discuss the married man accused of sexually harassing Yvonne Campbell, his reported improper ex parte communications, and Judge Brann's treatment of that conduct.
6. Plaintiffs may specifically identify and discuss that man as a comparator when alleging selective professional discipline, gender discrimination, favoritism, and First Amendment retaliation.
7. Plaintiffs may publicly discuss Kenneth Williams's sexually charged messages, the use of government computers, inappropriate comments by courthouse employees, and the treatment of women working in the federal judiciary.
8. Plaintiffs may criticize Brann's Civil Justice Reform Act deadline and the judicial administration challenged in *McNeal v. Brouse*.
9. Plaintiffs may criticize the judicial and legal-professional system challenged in *Martineau v. American Bar Association*, including judicial self-regulation, court-created procedural rules, attorney discipline, and judicial immunity.
10. Plaintiffs may file and prosecute nonfrivolous lawsuits, judicial-misconduct complaints, recusal motions, appeals, and petitions challenging judicial conduct without retaliation for their protected viewpoints.

11. Plaintiffs may discuss these subjects with clients, attorneys, journalists, government officials, and members of the public, subject to otherwise applicable law.

12. Defendants and persons bound by this Order under Federal Rule of Civil Procedure 65(d)(2) are temporarily enjoined from imposing professional sanctions, restricting protected communications, or taking adverse professional action against Martineau or SLAAY in retaliation for the protected expression identified above.

This temporary restraining order takes effect immediately. unless extended in accordance with that Rule. The Court will conduct a preliminary injunction hearing with service and briefing on an expedited schedule to be specified by separate order.

BY THE COURT:

______________________________

United States District Judge